UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM CALDWELL, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security,[1] )<br>)<br>Defendant. ) | Case No. 4:15CV01662 AGF |

**MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff William Caldwell was not disabled, and thus not entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner will be affirmed.

**BACKGROUND**

Plaintiff, who was born on September 14, 1969, filed his application for SSI benefits on July 12, 2012, alleging disability due to post-traumatic stress disorder ("PTSD") and back, knee, and foot pain. On August 24, 2012, Plaintiff's application was denied at the initial administrative level, and on September 13, 2012, he requested a hearing before an Administrative Law Judge ("ALJ"). On November 21, 2012, the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit.

Veterans' Administration ("VA") issued a decision on Plaintiff's claim for service-connected compensation, concluding that Plaintiff had a 70% service-connected impairment rating effective December 2, 2010, due to PTSD, and that Plaintiff was entitled to a monthly payment of $1,293. The VA determined that a higher evaluation of 100% was not warranted because there was not a total occupational and social impairment.

A hearing before an ALJ was held on Plaintiff's application for SSI benefits on March 11, 2014. On April 7, 2014, a vocational expert ("VE") submitted answers to interrogatories posed by the ALJ. (Tr. 235-37.) By decision dated July 8, 2014, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform certain sedentary unskilled jobs listed in the Dictionary of Occupational Titles ("DOT") (addresser, document preparer, and press clippings cutter and paster) that the VE had stated a person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on October 5, 2015. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's RFC determination is not supported by "some" medical evidence, as required by Eighth Circuit precedent. Plaintiff argues that the ALJ erred in not according proper weight to the opinions of consultants who evaluated Plaintiff at the request of the VA. More specifically, Plaintiff faults the ALJ, who gave "significant

weight" to the November 6, 2012 report of Michael O'Day, M.D, for not giving such significant weight to Dr. O'Day's opinion that Plaintiff required a back brace and a walker due to back and knee pain.   And Plaintiff faults the ALJ for giving "little weight" to the report of Desiree Sutherland, Ph.D., who performed a psychological examination on November 5, 2012, and found significant symptomology.   Plaintiff argues that giving little weight to Dr. Sutherland's report cannot be explained, as the ALJ gave "significant weight" to the November 4, 2013, mental health report of consulting examiner Shannon Davis, Ph.D., who in turn, had credited Dr. Sutherland's report.

    Plaintiff also argues that the ALJ erred in the following additional ways:   (1) finding it significant that on October 12, 2012, a physical therapist thought there might be symptom magnification, when at the same time, the therapist suggested that Plaintiff try a walker and provided him with a back brace; (2) stating the Plaintiff had not been referred to a neurologist or pain management doctor, when Plaintiff's primary care physician (VA staff physician Leo Warren, M.D.) indicated on April 3, 2013, that such a referral was a consideration; (3) finding that Plaintiff had not complained of psychiatric problems, when the record shows that Plaintiff saw a psychiatrist from 2012 to 2013; (4) finding that Plaintiff's daily activities were inconsistent with his allegations of disability, when those activities were very limited; (5) giving only cursory review to the July 18, 2012 third-party statement of Plaintiff's friend, Cherryl Morris, who represented that she had known Plaintiff for six months and observed that he spent his days watching television and sleeping; and (6) not giving a legally sufficient reason for disregarding the VA finding of

PTSD at 70%. Plaintiff asks the Court to reverse the Commissioner's decision and remand the matter for proper consideration of the medical evidence of record, third-party evidence, and the VA's finding.

**Agency Records, Medical Records, and ALJ's Decision**

The Court adopts Plaintiff's recitation of the facts set forth on pages 3 through 9 of his brief (Doc. No. 14), with which Defendant represented she agrees, and the unchallenged additional facts set forth in Defendant's Statement of Additional Material Facts (Doc. No. 20-2). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm

4

the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments. A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the

5

Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step five burden. *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**The ALJ's RFC Determination**

The ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined by the Commissioner's regulations except that he could only occasionally stoop, kneel, crouch, and climb ramps and stairs; and never crawl or climb ropes, ladders, and scaffolds. The ALJ further found that Plaintiff could not tolerate any exposure to unprotected heights or moving machinery. With respect to mental functioning, the ALJ found that Plaintiff was limited to simple, routine, and repetitive tasks in a low-stress environment, defined as one requiring only occasional decision-making and occasional changes in the work setting. The ALJ further limited Plaintiff to jobs with only occasional contact with supervisors and coworkers, and no interaction with the public. (Tr. 11-18.)

As Plaintiff argues, "[b]ecause a claimant's RFC is a medical question, an ALJ's

assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*. Here, the Court concludes that the ALJ's RFC determination is supported by sufficient medical evidence. The ALJ acknowledged that diagnostic imaging of Plaintiff's lumbar spine showed some bulging discs, facet joint arthropathy, spinal canal narrowing, and neuroforamina narrowing; however, as the ALJ noted, these abnormalities were characterized as "mild." (Tr. 440.) The ALJ also considered that x-rays of Plaintiff's knees showed no abnormalities, and that the record contained few findings of abnormal range of motion of the knees, with no objective findings of knee instability, swelling, or effusion. Although Plaintiff displayed decreased strength in bilateral knees during the October 13, 2012 physical therapy appointment noted above, the physical therapist questioned Plaintiff's effort on strength testing. *See Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (holding that the ALJ was entitled to draw conclusions about the plaintiff's credibility based on an evaluator's indication that the plaintiff was exaggerating symptoms and giving less than his full effort).

The ALJ also properly relied on Plaintiff's conservative treatment history as suggesting that Plaintiff's physical impairments were not as severe and limiting as to be disabling, as Plaintiff alleged. Plaintiff's use of relatively mild pain medication weighs against a finding that he was physically unable to do sedentary work with the physical limitations assigned by the ALJ's RFC determination. *See, e.g., Robinson v. Sullivan*, 956

F.2d 836, 840 (8th Cir. 1992). While, as Plaintiff argues, his primary care physician (Dr. Warren) noted on April 3, 2013, that he would consider a possible referral to pain management "pending response to med changes," the record does not indicate that he ever actually sent Plaintiff to see a pain specialist or otherwise thought that stronger medication than that prescribed on that day (continuing Tylenol and Flexural, increasing Meloxicam, and adding Neurontin) was necessary. (Tr. 440.) And progress notes dated July 26, 2013, indicate that Plaintiff reported that his pain medication regime was "fine." (Tr. 643.)

The Court reaches the same conclusion with respect to the psychological findings reflected in the ALJ's RFC. Mental health treatment notes indicated that Plaintiff sometimes exhibited a restricted affect, but on most occasions, he demonstrated fair insight, judgment, concentration, attention, and memory; and normal thought processes, thought content, eye contact, speech, and appearance. (Tr. 291, 327, 457, 461, 504, 546). In addition, as the ALJ noted, Plaintiff attended few psychotherapy appointments since early 2012 and did not require emergent care, participate in an intensive outpatient program, or require psychiatric hospitalization since his application date. Plaintiff repeatedly told his treatment providers that his medications were helpful in alleviating his symptoms of depression and anxiety. In sum, although a somewhat close question is presented on whether Plaintiff can perform "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world*," see* *McCoy v. Astrue*, 648 F.3d 605, 617 (8th Cir. 2011), the requisite physical and mental acts

of the jobs identified by the VE as suitable for Plaintiff, the Court concludes that the ALJ's RFC determination is supported by the medical record, and is within the "zone of available choice."

**<u>Weight Accorded to Consulting Evaluators' Opinions</u>**

As noted above, the ALJ gave "significant weight" to the Dr. Davis's November 4, 2013, mental health report.  This report noted that Plaintiff reported ongoing irritability and sleep disturbance, and that he stayed home most of the day and watched television due to anger outbursts.  He was seeing a psychotherapist once a month and was being followed by a psychiatrist for medication management of the psychotropic medications he was taking – Paraxetine 50mg daily and Prazosin 4mg daily.[2]  Dr. Davis indicated that Plaintiff had an occupational and social impairment with "reduced reliability and productivity," rather than a total occupational impairment.  She stated that Plaintiff had "moderate" PTSD symptoms that were compounded by stressors such as finances, unemployment, housing problems, and neighborhood violence.  Dr. Davis referenced Dr. Sutherland's evaluation from one year earlier, and stated that Plaintiff's experience of symptoms probably neither improved nor worsened since then.  She opined that Plaintiff would be able to maintain some type of gainful employment if his occupational setting was consistent with his preferences, including a more isolated work environment.  (Tr. 600-09.)

---

[2]  Paraxetine (Paxil) is an antidepressant that can be used to treat PTSD.  Prazosin can be used to treat sleep problems associated with PTSD. https://www.drugs.com.

Contrary to Dr. Davis, one year earlier, on November 5, 2012, Dr. Sutherland assessed "moderate to severe" PTSD symptoms, and an occupational impairment with deficiencies in most areas. She stated that Plaintiff's PTSD symptoms impaired his occupational functioning as he left numerous jobs due to difficulty getting along with others and generalized discomfort interacting with others. (Tr. 534-48.) The ALJ gave this report "little weight" on the grounds that it was not supported by objective evidence of record, and was based largely on Plaintiff's reporting of symptoms, including some, such as suicidal ideation, that were not supported by other evidence.

Dr. O'Day's November 6, 2012 physical evaluation report noted that Plaintiff had a diagnosis of lumbar osteoarthritis and degenerative disc disease. Plaintiff reported pain with prolonged standing, walking, and repetitive bending. Upon examination, Plaintiff displayed a decreased range of motion and pain with movement in the lumbar spine. He reported pain to palpation of his lower paralumbar muscles but displayed no guarding or muscle spasms. He had normal 5/5 strength in hips flexion, and 4/5 strength in knee extension. Plaintiff had no muscle atrophy and normal deep tendon reflexes and sensation. He had negative straight leg raises and no signs of radicular pain. Plaintiff reported that he used a back brace to reduce lumbar pain and a wheel walker for his right knee and lower back pain. Dr. O'Day opined that repetitive bending and prolonged standing or walking would increase Plaintiff's lumbar pain. Dr. O'Day noted that Plaintiff's lumbar radiographic changes were more than likely secondary to the normal progression or aging. He did not opine that Plaintiff needed a walker and back brace, but

10

noted that Plaintiff reported using these aids to reduce his lumbar and right knee pain. (Tr. 508-30.)

Upon review of the record, the Court concludes that the ALJ was entitled to rely on Dr. Davis's mental evaluation, rather than Dr. Sutherland's earlier evaluation. *See Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010) ("It was the ALJ's task to resolve the differences between these consultative evaluations in the light of the objective evidence."); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) ("It is the ALJ's function to resolve conflicts among the opinions of various" examining sources). Dr. Davis's report is supported by the record and provides sufficient evidence to support the ALJ's RFC determination with respect to Plaintiff's mental abilities and limitations.

Similarly, Dr. O'Day's report supports the ALJ's RFC determination that Plaintiff could perform sedentary work with the physical limitations added by the ALJ. Plaintiff provides no reason to discredit Dr. O'Day's report, and the Court concludes the report is consistent with the other medical evidence in the record as a whole. For example, on May 1, 2012, the VA determined that Plaintiff was capable of competitive employment. (Tr. 283.)

**ALJ's Assessment of Plaintiff's Daily Activities**

In determining credibility, consideration must be given to all relevant factors, including the plaintiff's prior work record and observations by third parties and treating and examining physicians relating to such matters as plaintiff's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors;

dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Here, Plaintiff reported in his application forms that he slept a lot, but he also reported that he prepared his own simple meals, and went shopping for household needs. At a medication management/psychotherapy visit on February 12, 2013, Plaintiff reported that he enjoyed working on his computer, watching movies, and going out "some" with his wife. (Tr. 456.) Although the record does not reflect that Plaintiff's daily activities were "robust" as stated by the ALJ (Tr. 26), they are not inconsistent with his ability to perform a limited range of sedentary work. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (finding that the ALJ's reasons for discounting the plaintiff's credibility, in concluding the plaintiff could perform sedentary work, were supported by substantial evidence when, among other factors, the plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with the use of an electric cart").

**Third-Party Statement**

Plaintiff is correct that an ALJ is obligated to consider observations of third parties. 20 CFR § 404.1513(d)(4); *Willcockson v. Astrue*, 540 F.3d 878, 880–81 (8th Cir. 2008) ("[S]tatements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints[.]"). Nevertheless, an ALJ may discount third-party statements on the same grounds as he or she discounts a claimant's own testimony. *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998); *Sharkey v. Colvin*, No.

C13-1037, 2014 WL 5286880, at *13 (N.D. Iowa Oct. 15, 2014). Indeed, even where the ALJ fails to explicitly address observations of a third party, remand is not required where the same evidence that supports discrediting the claimant's testimony also supports discrediting the third party's observations. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

Here, the ALJ did explicitly mention Morris's third-party statement, and discredited it for a valid reason, namely that Morris was Plaintiff's friend, and her allegations were the same as Plaintiff's, which were not supported by the record evidence to the degree of limitation alleged. (Tr. 26-27.) *See Sharkey*, 2014 WL 5286880, at *13. The Court finds no reversible error in the ALJ's consideration of Morris's statement.

**VA 70% Disability Rating**

It is not clear just how Plaintiff believes the ALJ did not properly take into consideration Plaintiff's VA disability rating of 70% disabled due to PTSD. The Court notes that the ability to engage in substantial gainful activity under the Social Security Act, "does not necessarily contradict a VA 70% disability rating due to PTSD." *McCleary v. Colvin,* 187 F. Supp. 3d 497, 538 (M.D. Pa. 2016) (citing authority).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 8th day of March, 2017